RAMÓN BERRÍOS MIRANDA, Plaintiff and Appellant, *v.* ASSOCIATION OF EMPLOYEES OF THE GOVERNMENT OF PUERTO RICO, Defendant and Appellee; COMMONWEALTH OF PUERTO RICO, Intervener.

No. AP-62-51.    Decided June 27, 1963.

Luis E. García Benítez for Association of Employees of the Government of Puerto Rico. *J. B. Fernández Badillo, Solicitor General,* and *Nilita Vientós Gastón, Assistant Solicitor General,* for the Commonwealth of Puerto Rico.

MR. JUSTICE SANTANA BECERRA delivered the opinion of the Court.

On June 27, 1963, the full Court disposed of this case by means of the following

"JUDGMENT:

"For the reasons stated in the opinion rendered this day in appeal No. 12732, *Félix C. Hernández Montero v. Antonio Cuevas Viret, etc.,** the final judgment appealed from rendered by the San Juan Part of the Superior Court under date of May 11, 1961, will be reversed and the case remanded to the trial court for further proceedings before that Court consistent with the said opinion."

* 88 P.R.R. 767.

The Solicitor General and the respondent Association have filed separate motions for reconsideration alleging that the facts involved in the above-entitled case are different from those in *Hernández Montero*, and therefore that the holding in the latter should not govern the present case.

Regarding the contention that the facts are different, the Solicitor General and the Association are right. According to the facts which the trial court found proved, appellant originally joined the Police Force of Puerto Rico on December 15, 1941. He was retired from the Force on October 30, 1957, for physical disability after undergoing examination by the Police. Appellant was covered by the insurance of respondent Association, and when he was retired from the Police Force he applied for payment of his insurance, which was denied on February 20, 1958, because in the opinion of the physician of the Association appellant was not incapacitated for the discharge of the office which he held in the Commonwealth Police.

The issue thus joined, on March 19, 1958, appellant requested his reinstatement in the Police Force of Puerto Rico and was readmitted. After being reinstated, appellant sought to reacquire his status of insured in the Association and the latter denied the insurance because of physical disability. Reconsideration of such denial of the benefit of insurance having been denied, he brought this mandamus proceeding in the San Juan Part of the Superior Court seeking an order directing the Association to admit him as an insured.

While in the *Hernández* case the person in question was covered by the insurance and he was denied the benefit thereof upon his retirement for physical disability, in the instant case the employee is not permitted to be insured because of physical disability. As to the facts, that is the difference. As to the law, the trial court acted in the course

of the trial and denied appellant's action on criteria similar
to those stated in *Hernández* and based on those in *Arzola*.[1]

The record shows the following incidents which occurred
during the hearing of the case:

[Testimony of appellant, Commonwealth Police Sergeant.]

"Q. How long have you been working in the Police Force?
A. About 20 years.
Q. You joined originally on December 15, 1941?
A. On January 25, 1941.
Q. Very well. And you retired on October 30, 1957 from
the Police Force?
A. Yes, sir.
Q. Did you apply for the insurance of the Association of
Employees of the Government of Puerto Rico?
A. When I was retired I applied to the Employees' Asso-
ciation for the insurance. I was examined by Dr. García
Cabrera and I was denied the insurance because I was
not disabled.
Q. After that application, did you rejoin the Police Force?
A. I was recalled on May 19, 1958, and I applied for re-
admission in the Employees' Association and was exam-
ined by Dr. García Cabrera, and I was not accepted
because I was disabled.
Q. First, you were retired from the service?
A. Yes, sir.
Q. Did you apply to the Employees' Association?
A. Requesting the insurance.
Q. And the request was then denied?
A. Because I was not disabled.
Q. Then, after denying your request to collect the insur-
ance, did you apply for reinstatement in the Police Force?
A. Yes, sir.
Q. Were you readmitted in the active service of the Police?
A. I was admitted as an active member.
Q. After you were readmitted in the active service in the
Police Department, you applied for readmission, also
in the insurance of the Employees' Association?

---

[1] *Arzola* v. *Loan Fund Association*, 72 P.R.R. 394 (1951).

A. Again as an active member and it was denied by Dr. García Cabrera because I was disabled, according to the examination made by him.

Q. The same physician who had denied the insurance because he found that you were capacitated also denied readmission in the insurance plan because you were incapacitated?

A. Yes, sir.

Q. Since the date you re-entered upon your duties in the Police Force, have you worked continuously with the Police Department?

A. Yes, sir.

Q. And are you working at present?

A. Yes, sir."

On cross-examination by the attorney for the Association:

"Q. When did Dr. García Cabrera deny the insurance because he found that you were not incapacitated?

A. He denied it when I was retired.

Q. On what date?

A. I cannot tell the date. When I retired, immediately one week later, I applied for the insurance.

Q. When did you retire?

A. I retired on August 27, 1957, I believe.

Q. And immediately you requested your disability?

A. The disability insurance.

Q. Which was denied?

A. Yes, sir.

Q. You mean that it was shortly after August 1957. And Dr. García Cabrera found that you were not incapacitated?

A. Yes, sir.

Q. And that's why the insurance was denied?

A. Yes, sir.

Q. Time passed and you, who had ceased in the Police because of disability . . .

A. Yes, sir.

Q. Were you readmitted in the Police?

A. Yes, sir.

Q. Because the Police found that you were capacitated?

A. Yes, sir.

Q. When did you rejoin because you were capacitated?
A. On May 19, 1958.
Q. Or less than one year?
A. One year and eight months.

.    .    .    .    .    .    .    .

Q. Anyway, less than one year, but actually several months elapsed between one date and the other. That is, from the time you were separated by the Police because of physical disability to the same time when shortly thereafter Dr. García Cabrera denied the insurance because he found that you were not incapacitated according to the Association Act, several months elapsed and then the Police found that you were capacitated, like Dr. García Cabrera did, and you rejoined?
A. Yes, sir.
Q. And when you rejoined, then you applied for readmission as a member of the Association Insurance Fund. Dr. García examined you and found you, several months after the previous examination, that you were not incapacitated, I mean, that you were not capacitated to apply for the insurance fund?
A. Yes, sir.
Q. That's all."

Appellant offered the testimony of Rafael A. Serra, Chief of the Retirement Division of the Office of Personnel of the Government, and together with him identified all the medical reports in his official custody as the records of the Retirement Division of the Government relative to appellant's retirement and reinstatement in the Police Force. When those records were offered in evidence the attorney for the Association objected as follows:

"We rather object to the admissibility of these documents. Whatever has been signed by physicians alien to the Association cannot serve as a basis for the discussion, for the decision whether or not the Association should admit an employee in the Insurance Fund. What the Insurance Fund System grants is an opportunity to contract between the Association and the employee, subject to the opinion of the physician of the Asso-

ciation as to the employee's health condition. If the physician of the Association finds that the employee is not capacitated, that is the decision which the Association, *and the court as the case may be,* must take into consideration for his admission or not. The Supreme Court of Puerto Rico has held in another aspect of the insurance, *but on the same point,* that the decision which prevails, in accordance with the provisions of the Act, for the purposes of the insurance in connection with employees and the employee's capacity, is the decision of the physician of the Association. Hence, the decision of other physicians, whether private or of this retirement institution, cannot serve as a basis at all, as a matter of law, in determining whether the Association has acted legally or against the law in denying the admission."

Appellant's attorney argues the matter at length and invites the Court's attention to the fact that the Association is bound by law to prescribe regulations or rules which shall govern its procedures, which it never adopted, and that there are no norms whereby the physician of the Association could be guided in determining the admissibility or inadmissibility of a particular application in the insurance plan, the effect of which was to delegate to one single physician full power to legislate in connection with the norms of the insurance plan of the Employees' Association of the Government. In deciding the incident, the court said:

"In view of the witness' testimony to the effect that Dr. García Cabrera first examined him and found him capacitated, that is, that he had no right to receive the pension benefits, and Dr. García Cabrera also examined him subsequent thereto and then asserted that he was incapacitated, the court is of the opinion, in the light of the case decided by the Supreme Court construing the scope of the medical examination to enjoy and in some way have a right to the insurance or to the pension, that the objection should be sustained and denies the admission of the documents *on the ground that it has not been established that those reports were signed by the physician of the Association.*"

After further discussion, the trial court again said:

"That there not being . . . In the first place, because it has been established, up to this moment it has been said that the person who examined this. petitioner on both occasions was Dr. García Cabrera, and in the second place because pursuant to the norms of what the law is, at least insofar as the ruling of the Supreme Court prevails, as stated in the case in which the law is construed as respects the medical report, without which a disability pension cannot be granted, the court admits that that is the reason for denying it. That is, to uphold in the first place the authority of the law and, in the second place, *that the document has not been connected with Dr. García Cabrera."* (Italics ours.)

The admission of those medical reports having been refused, appellant announced that Dr. Andino and Dr. Coca Mir, who signed the reports, were in the courtroom for the purpose of testifying. Dr. Andino was asked on the witness stand whether he had had occasion to examine appellant Berríos, to which the Association objected in the belief that the purpose was to offer the medical testimony on appellant's state of health and physical condition by a physician other than the physician of the Association. The attorney for the Association invoked the provision of the Act to the effect that neither the Board *nor the courts, as the case may be,* shall admit any other evidence than that specifically provided by the Act, and stated:

"We admit that the provision under consideration refers to the granting or denial of the disability insurance; *that we are concerned here with the admission or nonadmission in the insurance. We hold that the principle is exactly the same.* That the relation in this case is exactly the same as the relation with an insurance company. That it is a contractual act." (Italics ours.)

The trial court sustained the objection and refused to admit the medical testimony of Dr. Andino on appellant's state of health. It permitted, however, that the physician's testimony be incorporated into the record.

Appellant offered the testimony of Dr. R. Coca Mir and the same situation of law was reproduced. In view of the Association's objection, the trial court refused to admit his testimony, although the same was incorporated into the record. The same situation of law occurred with the testimony of Dr. Carlos Enrique Beltrán. The same situation of law occurred with the testimony of Dr. Arnaldo Palmer, of the Police, which was not admitted by the court in view of the Association's objection.

Eleuterio Vega, Secretary-Accountant of the Association, testified for appellant that he could assure that there was no regulation governing the administration of the Insurance System. That after a case was returned by the physician for admission or application for disability, it was the practice of the Board of Directors to hear the physician and decide the case. That there were no norms, written or otherwise, as to which disease or which conditions of any disease could serve as a basis for rejecting an application for admission. *That in his opinion the Association had left this matter completely to the discretion of its physician.* That in his opinion in some cases Dr. García Cabrera had referred applications to specialists, but that there was no written regulation providing that he was bound by those specialists, and that he did not know which was Dr. García Cabrera's specialization.

Dr. García Cabrera, as appellant's witness, testified that the admission of a person in the insurance was connected with his work, and that when making the examination he took into account the office which the person proposed to discharge in the Government of Puerto Rico; that the physical requirements for all the offices were furnished to him by the corresponding department where the person was going to work, although he also said that he thought that he could determine whether an applicant was incapacitated to discharge the office notwithstanding the Police found him capacitated. He then said that before examining an applicant

for admission in the Insurance Plan he did not get in touch with the Police in order to determine whether or not he was capacitated, and that his determination was separate and apart from any determination which the Police Department and the Retirement System could make.[2]

In *Hernández, supra,* we considered § 20, as amended, of Act No. 52 of July 11, 1921 (Sess. Laws, p. 374), which created what is now known as the Association of Employees of the Government of Puerto Rico, and which provides everything relative to death and physical disability insurance and the manner of granting its benefits. That is the section which provides with respect to the determination of total and permanent physical disability that neither the Board of Directors *nor the courts, as the case may be,* shall admit any other evidence than that specifically prescribed in that Act, and such other evidence is the medical opinion of the physician of the Association.

The case at bar is covered by a different provision which is § 25 of the Act *supra,* as amended by Act No. 54 of June 10, 1954. Section 1 of the Association Act provides that there is hereby created a public institution, *compulsory* upon *all* permanent public employees and officials of the Government of Puerto Rico. The lawmaker provided, among other objectives, that the purposes thereof shall be to stimulate saving among its members *and to insure them against physical disability or death.* Section 25 provides that every permanent officer or employee *who has not accepted and is obligated to accept* the benefits of the Association by virtue

---

[2] Drs. Andino, Coca Mir, and Beltrán stated that they were specialists in internal medicine. According to their testimony, appellant was in their opinion capacitated for the office which he held in the Police. Dr. Palmer, the Police's private physician, testified that appellant met the medical requirements of the Force to discharge his office.

In this appeal we are not going to settle conflicting medical opinions nor to pass upon the merits of the question which is one for the trial court.

of the provisions of this Act, and every newly appointed officer or employee who *is likewise obligated* to become a member of the Association, shall make an application for membership addressed to the Chairman of the Board of Directors, submitting at the same time a full-length photograph, taken on the date of the application, as well as a birth certificate of the Registry of Vital Statistics, baptismal certificate or, in default thereof, any other document of legal sufficiency to prove his age; and that the officers and employees failing to meet these requirements shall have the corresponding percentage for the savings fund deducted from their salaries, and *the time fixed in this Act* for being covered by the benefits of insurance for death or disability* *shall not be counted* for them until they have filed their application and action is taken thereon pursuant to the provisions hereof; and that as long as they do not apply for admission to be covered by all the benefits of the Association, the Board of Directors may grant them loans *in an amount not exceeding the amount of their savings and accumulated dividends,* such loans being payable through salary deductions at a rate of not less than three percent per month of the amount of the loan.

Section 25 further provides that the Chairman shall refer to the physician of the Association the application and other documents mentioned in the preceding paragraph so that he may make such examination or examinations of the applicant as he may deem proper, and report to the Board the result of his work. After receipt of such report the Board shall pass upon the application and shall notify the applicant and the department concerned of its decision, directing that the corresponding deductions be made for the savings fund and for insurance, if his application has been approved. *If*

---

* This term is fixed at five years.

*the application is rejected, the employee shall only be covered by the savings and loan benefit.*

It must be noted that § 25, which is applicable in this case, does not contain any provisions similar to those of § 20 which we discussed and analyzed in *Hernández.* However, the trial court and the Association itself in the course of the trial assimilated the situation of this case as one under § 20. This was expressly stated by the attorney for the Association and accepted by the court, as shown by part of the record copied at the outset. As a matter of law, the court accorded to this case the same treatment as that in *Hernández* under § 20.

The main contention of respondent Association has been that this case is the same as that of a private insurance company which is free to accept or not a particular person as insured, and for which it has the right to depend solely on what its own physicians have to say. An objective and realistic approach of the situation convinces us that respondent Association is not right.

■ The Association exists as a government-created entity for purposes of public interest, such as the protection of the government employees themselves. It is neither a private business nor is it for gainful purposes or speculation. The lawmaker expressly stated that one of the purposes of the Act is *to insure* the employee *against death and physical disability,* the cost of which to the employee is unquestionably less than any similar insurance obtained from a private business entity. Section 25 provides that the employee should accept the insurance, and shows interest in that he accept it as part of the public policy sought. That is why to a certain extent it imposes as a sanction, in order to obligate him to accept promptly and until he accepts the insurance, the limitation of his right to loans and other benefits granted to the members of the Association.

Furthermore, if we compare the benefits enjoyed by an employee who forms part of the insurance or has been admitted in the insurance with those of one who has not —irrespective of the great benefit of the insurance itself— the fact that every employee longs for and desires to be accepted for insurance is unquestionable.[3]

■ Section 19 of the Act authorized the Board of Directors to prescribe such rules and regulations as may be necessary for the application thereof, and that such rules and regulations would have the force of law. According to the testimony of Vega, Secretary-Accountant, there was no specific regulation on the manner of determining the eligibility of an employee who wanted to accept the insurance, with the exception of the provisions of § 25. It must be recognized that in this sphere of action the Association must have a broad margin of criterion, but it is necessary to recognize also that the refusal to admit an employee for the insurance benefits cannot be whimsical, unjustified, or without a well-reasoned and convincing basis therefor.

■ If we consider the disadvantageous position as respects the full enjoyment of all the benefits of the Association

---

[3] A noninsured employee may only make:

(1) a loan only for the amount of his savings and dividends.

In addition to the policy for $7,856.03 for death or $7,089.60 for physical disability, if he belongs to the first class, and for $5,261.73 or $4,758.43, respectively, if he belongs to the second class, for which he pays only $6 a month in the first case or $3 a month in the second case, an insured may make loans:

(1) of emergency

(2) of his savings and dividends

(3) of his savings plus 30 percent of the *annual* salary, without sureties

(4) of his savings plus 40 percent of the *annual* salary, with sureties, and

(5) mortgage loans.

If we consider that in 1961–62 loans for $34,097,871 were granted, we will appreciate the great importance to the employee to be covered by the insurance and to be able to make loans of all kinds.

of an employee who is not admitted to the insurance as compared with an employee who is admitted, an unjustified or unreasonable refusal could result in a situation of unequal protection of the law, since the constitutional prohibition in that sense is unquestionably applicable to the Association, which is a legislative creature the functions of which are expressly provided and supervised by law, as well as to any other government agency.

We do not even insinuate, nor should it be taken as an advanced criterion, that in the instant case the appellant was unreasonably excluded from the insurance, a question which will be decided in due time. We are merely stating the doctrinal part involved.

In view of our ruling in *Hernández*, the trial court having applied in this situation the same criterion of § 20, the doctrine of *Hernández* also applies here. In the administrative sphere of the matter it is natural that the Association should have preference for the medical opinion of its own physician and accord to it great weight. However, as soon as the matter came out of such administrative sphere and stepped into a judicial action, the trial court committed a gross error, in justice to it guided by the criterion of *Arzola*, in excluding systematically any competent and admissible evidence aimed at supporting appellant's cause of action, depriving him of a fair trial.

There is no reason for reconsidering our judgment of last June 27 reversing the judgment rendered in this case by the trial court and remanding the matter for further proceedings.*

---

* COMPILER'S NOTE: The judgment in this case states in part: "Mr. Justice Blanco Lugo concurs in the result."